## HARGROVE v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
March 27, 1928.

No. 7864.

1. **Criminal law** ⊜⇒656(2)—**Court's action in questioning witnesses and commenting on testimony for purpose of maintaining orderly progress of trial held not error.**

Action of trial court in questioning witnesses and commenting on various phases of testimony for purpose of bringing out the full facts for the consideration of jury without prejudice to defendant and for purpose of maintaining orderly progress of trial *held* not to constitute error.

2. **Criminal law** ⊜⇒656(2)—**Trial court may examine witnesses without indicating disapproval of witness or material fact.**

It is within the authority of trial court to examine witnesses, provided in so doing he does not indicate by words or manner his disapproval of a witness or a material fact which a litigant is endeavoring to establish.

3. **Intoxicating liquors** ⊜⇒233(2)—**Testimony of finding syphon near fruit jars similar to one in which whisky had been purchased held competent.**

In prosecution for possession and sale of liquor, testimony that syphon found with empty case of fruit jars similar to jar in which whisky had previously been bought contained whisky *held* competent as closely related to very essence of crime charged.

4. **Criminal law** ⊜⇒655(5)—**Record held not to sustain charge of misconduct of court by reason of disrespect towards defendant's counsel.**

In prosecution for possession and sale of intoxicating liquor, record *held* not to show that

defendant was prejudiced or that failure of justice resulted because of alleged misconduct of court by disrespect towards defendant's counsel.

**5. Criminal law ☞655(5)—Trial court held within province in correcting and rebuking counsel for not staying within record during argument.**

Action of court in correcting counsel and rebuking him for failure to keep within record during argument to jury *held* not to constitute error as being clearly within his province.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

W. M. Hargrove was convicted of the sale and possession of intoxicating liquor, and he brings error. Affirmed.

M. D. Hartsell and Archibald Bonds, both of Muskogee, Okl., for plaintiff in error.

Frank Lee, U. S. Atty., of Muskogee, Okl. (W. F. Rampendahl, Asst. U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

Before STONE and VAN VALKENBURGH, Circuit Judges, and KENNEDY, District Judge.

VAN VALKENBURGH, Circuit Judge. Plaintiff in error was convicted upon charges presented in two counts of an indictment returned at the January term, 1927, of the District Court for the Eastern District of Oklahoma. The first count charged possession of intoxicating liquor, to wit, whisky, in Muskogee county, Okl.; said county having been within the limits of the Indian Territory and a part thereof, prior to the admission of the state of Oklahoma into the Union, a place where the introduction of intoxicating and spirituous liquor is and was prohibited by federal statute. The second count charged a sale of whisky in violation of the National Prohibition Act (27 USCA). Both offenses were committed January 26, 1927. Four specifications of error, in substance, are assigned: (1) What is termed the general activity of the court throughout the trial to the prejudice of the defendant; (2) the admission of incompetent testimony; (3) an argumentative charge; (4) disrespect on the part of the court toward defendant's counsel. These specifications will be considered in their order.

[1] 1. Upon the first point urged, the record discloses that the court asked many questions of witnesses, and indulged in some comment upon various phases of the testimony. In but few instances was objection made and exception preserved. We think the partici-pation of the court to the extent shown was unnecessary and the practice one to be indulged only in exceptional cases and with caution. However, a careful examination of the record convinces that the questions asked were calculated and intended only to bring out the full facts for the consideration of the jury without prejudice to the defendant, except in so far as a full presentation of the facts might have that incidental effect. The comments of the court were for the purpose of keeping counsel within bounds and for maintaining the orderly progress of the trial. As said by this court in Rudd v. United States (C. C. A.) 173 F. 912:

"A judge should not be a mere automatic oracle of the law, but a living participant in the trial, and so far as the limitations of his position permit should see that justice is done."

[2] It is conceded that it is within the authority of the court to examine witnesses, provided in so doing he does not indicate by words or manner either his disapproval of a witness or of a material fact which a litigant is endeavoring to establish. We do not think the court in the instant case offended against this rule.

2. Plaintiff in error operated a filling station at a point about four miles west of the city of Muskogee, Okl. It was there that the alleged sale of the whisky was made. The residence of the plaintiff in error was situated at a little distance to the rear of the filling station. It was testified that when the government officers asked plaintiff in error for the whisky, a negro left the rear entrance to the filling station, went to the rear of the residence, and returned in a few moments with a bulky package; that thereupon, plaintiff in error came out from his building and deposited in the car of the purchasers a quart jar of corn whisky; for this he was paid $3.50. The next day officers procured a search warrant and made a search of defendant's premises. They found a number of fruit jars similar to that in which the whisky was delivered; also a syphon and an empty case of fruit jars. The syphon contained some whisky. The testimony, to the admission of which objection is made, occurred in the cross-examination of one Pollan, a government officer, by counsel for plaintiff in error.

"Q. They brought some whisky back in a jar to you; you don't know where they got it? A. Didn't see them get it.

"The Court: That question is negative. That is an improper way to examine the witness. Suppose he answers and says, 'I think

they got it down there.' You would want me to strike that out, and you are adopting that method for no other purpose than implying to the jury it might not have been gotten there.

"Mr. Bonds: The defendant excepts to the remark of the court.

"The Court: That is the way it appears to the court.

"Q. They brought you a quart of whisky? A. Yes, sir.

"Q. Now you and two other deputy sheriffs and two other men?. A. Yes, sir.

"Q. Why didn't you arrest him right then when you knew you would have him red-handed? A. I wanted to go back and get a search warrant.

"Q. And you didn't find any? A. I found some fruit jars and a syphon and an empty case of fruit jars similar to the one they purchased.

"Q. And you knew, and the United States attorney's office knew—

"The Court: Never mind.

"Mr. Bonds: That is a voluntary statement.

"The Court: You brought it out fishing.

"Mr. Hartsell: We object.

"Mr. Bonds: They knew that was there before from an old offense? A. No, sir; that was right new fruit jars.

"Q. Well, you didn't find any whisky? A. Only the syphon which contained whisky.

"The Court: What? A. Rubber syphon that they use to syphon whisky from a keg to jars.

"Mr. Hartsell: We move that testimony be stricken, incompetent, irrelevant, immaterial.

"Mr. Rampendahl: They brought it out.

"The Court: They brought it out, and for the present I will not rule on it. After the case is in, you can present your motion; then I will pass on it.

"Mr. Bonds: We except."

The exception taken was to the refusal to strike out the answer of the witness. It will be observed that action was merely suspended. Later on the court ruled as follows:

"I think it (this evidence) is competent. You brought it out; you took your chances, but I think it is competent anyway. It is competent for this reason, it shows a—the theory of the government is that that quart jar, quart of whisky, was gotten in the rear of that building where they claim these jars were. Now I will put this in the record as to the statement that was made to Judge Bonds when he was asking one of the witnesses, 'You don't know where it come from?' This statement and the comments made by the court relative to that matter were not for the jury to consider. Those statements were made by the court in controlling the orderly trial of this case, and comments that may be made by the court directed towards counsel are not to be considered by the jury for any purpose, and are not to prejudice the cause of the defendant in any way."

"Mr. Hartsell: May we have an exception?

"The Court: You may have your exception.

"Mr. Hartsell: Now there is one thing, your honor, that I think ought to be stricken since he read that record, and that is this: You remember the witness testified this syphon, or whatever he found there, was something that bootleggers ordinarily use.

"The Court: That part will be stricken out if that appears in the record. That will be an expression of an opinion as an expert that there is no predicate laid for in the case, and that will be stricken out and withdrawn from the jury, and they will be admonished not to consider it for any purpose."

[3] The remark of the court to which exception is taken was unnecessary, but was obviously made for the purpose of controlling the orderly trial of the case from its view point. The statement subsequently made in ruling upon the admission of the evidence removed any prejudicial effect, if such existed. The cross-examination of the witness was not obstructed. In view of his testimony that he did not see the whisky bought, the comment was harmless. Furthermore, the testimony sought to be stricken out was competent because it was closely related to the very essence of the crime charged. St. Clair v. United States (C. C. A. 8) 12 F.(2d) 376–378. The containers produced under the search warrant were of the same kind as that in which the whisky sold was delivered. They were found in the same place from which witnesses testified the whisky bought was procured. The syphon containing whisky was another piece of pertinent evidence.

3. The exception to the court's charge as argumentative was general in its nature, and a large part of the charge is quoted in the assignments of error. We do not deem it necessary to quote in extenso. A careful examination of the charge discloses that this assignment is without merit. The facts are recited in considerable detail, but there is no unfairness in the recital. In fact there is no approach to argument therein. Plaintiff in error cannot complain of the legitimate inferences to be drawn from a clear and com-

prehensive statement of the facts. Such a recital is permitted, and in many cases demanded. Throughout the charge the jurors were amply cautioned that their memory, and not that of the court, was to be relied upon, and that their judgment of the effect of the evidence was to be decisive.

[4] 4. In support of the charge of disrespect on the part of the court towards defendant's counsel to the prejudice of the defendant, reference is made to a colloquy between court and counsel when the court asked, at the conclusion of the charge, whether any instructions were desired by either side.

"Mr. Bonds: I would like to except, your honor.

"The Court: Very well.

"Mr. Bonds: The defendant excepts to the method of giving the instructions, to the rehearsal of what the court considers the evidence. That emphasizes those questions that the court has emphasized. We think it is prejudicial to the defendant. I can't recall all the circumstances.

"The Court: You only take exceptions where you point them out.

"Mr. Bonds: Where the court states that three of the government witnesses, contradicted Mr. Hargrove, the defendant, and in marshaling the evidence as to the search of the car. We think the evidence is just a little bit different to what the court rehearses to the jury. And so also as to the parking of the car before reaching the filling station where the alleged whisky is to be sold (bought).

"The Court: Where is it wrong? Where did the court misquote the parking of the car? In what respect?

"Mr. Bonds: One witness testified that they were all in the same car with Jones and he couldn't see when he turned over.

"The Court: I didn't say that they were in the same car. I said so far as my recollection there was no evidence to show where they were seated in the car. Now there is a respectful way to take exceptions in this court. You know it.

"Mr. Bonds: Your honor, I am trying to be respectful. I think your honor's instructions are rather argumentative. That is all I want to say, and I want that exception.

"The Court: Gentlemen of the jury, the court in calling your attention to these matters did that to aid you to reach a conclusion and not to control or coerce you into any verdict. One way in weighing evidence, if there is a conflict, find who the witnesses are and where the conflict is. Here is one witness. What did he testify? And the second and the third, and consider each one separately. The court has not intended to make any argument in this case for one side or the other, but the court has intended to marshal this evidence and present it on both sides. I believe I omitted to refer to the fact of this other witness on the part of the defendant. He testified he was out there somewhere about 5 or 5:30. You heard his evidence. You heard what he said. His evidence has not been fully brought out. It don't show whether that car turned around or went on. You consider that evidence for what it is worth. This man, as I called to your attention, he (defendant) admits that these parties were out there—no; I am wrong about that. He admits a car came out there with three parties in it, but I believe his evidence was Mr. Wade wasn't one of them.

"Mr. Bonds: Your honor, that is just the reason I wanted to except.

"The Court: Why didn't you call it to my attention?

"Mr. Bonds: Your honor, I am doing it.

"The Court: Yes; but why didn't you call it to the attention of the court so the court could know what you were excepting to?

"Mr. Bonds: The defendant now excepts to the court's remarks to counsel.

"The Court: I asked if there was any further instructions, and that was for the purpose of getting these instructions fairly before the jury. I believe that the defendant in his evidence denied—while he admitted there was three men came out in that car, and he admitted as I narrated, except he said he didn't know any of them and this man here Wade was not one of them. Now I believe that is his evidence. Now you may consider all such conflict. You weigh it in the light of the rules which I have given; then consider the evidence on the part of the defendant. Consider the evidence on the part of the government; then consider the evidence altogether. Then if, after you have carefully considered the evidence if you believe this defendant guilty beyond a reasonable doubt, it will be your duty to convict him. If you have a reasonable doubt as to his guilt, it will be your duty to acquit him. The bailiff will show the jury to their room."

The following remark of the court is especially emphasized:

"Now there is a respectful way to take exceptions in this court. You know it."

This language on the face of the printed record seems uncalled for; but, as was freely conceded in argument, we cannot visualize the courtroom scene nor properly impute re-

versible error to language no more essentially prejudicial than that quoted. It is to be read in connection with the entire procedure in the course of which it was uttered. The general exception taken would, as the court said, have been of little avail. The court was making an earnest effort to ascertain in what respect its charge was challenged in order that corrections might be made, if such were demanded. In this it was receiving little assistance from plaintiff in error. When the point was finally made clear, the charge was clarified in a manner most favorable to the defendant, and with every evidence of a purpose to get the precise facts accurately and clearly before the jury.

Exception is also taken to the remarks of the court made during the argument of defendant's counsel. The latter in argument charged that defendant was not permitted to bring certain absent witnesses to court. The record upon this point is as follows:

"The Court: Now, Judge Bonds, you never made application in this court for those witnesses.

"Mr. Bonds: We except to the remarks of the court.

"The Court: Your inference is that the court wouldn't permit them to be brought here.

"Mr. Bonds: I didn't say that, your honor. I said the government, and I charge the government with the duty to have them here to let you hear their testimony, what they know about it. I say now they once had this negro arrested; they say they did. The unknown soldier—

"The Court: There is no evidence here that this negro was arrested.

"Mr. Bonds: Yes, sir.

"The Court: There is evidence a man named A. J. Givens was arrested.

"Mr. Bonds: The evidence shows Mr. Rampendahl asked if the defendant didn't help make his bond.

"The Court: I excluded it upon your motion. It is not before the jury, and the record don't disclose whether A. J. Givens is a colored or white man.

"Mr. Bonds: We except to your honor's remarks.

"The Court: I excluded it. It is proper for this court to keep counsel within the record."

[5] In this correction and rebuke of counsel, if such it can be called, the court was clearly within its province.

We have carefully considered all the assignments of error, and have read and re-read the record with painstaking care. It is quite

apparent that counsel in their zeal throughout the trial were disposed to be somewhat captious. The phrase, "we except to the remarks of the court," is of frequent occurrence, often without reasonable justification. The position of the court was thus made difficult. The guilt of the defendant was amply disclosed by the evidence. Taking the record as a whole, we do not feel that plaintiff in error was prejudiced in his defense nor that a failure of justice has resulted. With respect to the alleged misconduct of the court, we think the very most that can be said in favor of plaintiff in error is well stated by the Court of Appeals of the District of Columbia in Grock v. United States, 53 App. D. C. 146, 289 F. 544, quoted in the brief of plaintiff in error:

"The first assignments complain of the conduct of the trial court toward the defendant and his counsel in the presence of the jury, alleging that it tended to bring them into contempt and ridicule, and to prejudice them in the estimation of the jury. We think that these complaints are not without some support in the record. It is an important rule that an attorney at law appearing in open court in the trial of a case is entitled to such treatment from the court that the interests of his client may not be prejudiced. That is not a matter of indulgence, but of right. We will not, however, discuss in detail the incidents which counsel complain of, since we conclude upon an examination of the entire record that they do not justify a reversal herein."

See, also, Smith v. United States, 53 App. D. C. 117, 2 F.(2d) 919.

Our conclusion is that the judgment below should be affirmed.